## Sellers *versus* Benner.

1. In a petition under the Act of June 11th 1879, to procure the satisfaction of a mortgage, the terre-tenant alleged that when the property was conveyed by the mortgagor to him, he had paid the mortgage debt to the mortgagee. In his answer, the mortgagee denied the payment, and the assignee of the mortgage alleged that she was the assignee for value without notice. The court directed an issue to try the question of payment, and the petitioner, who was plaintiff in the issue, testified that the mortgagee had undertaken to procure a conveyance of the property to him clear of encumbrances for a certain consideration; that plaintiff had accepted the conveyance on these terms, and the consideration was paid, but the mortgages were not satisfied. It was admitted that the mortgages were subsequently assigned for value to one of the respondents, the defendants in the issue. The court below directed a verdict for the defendants on the ground that there was no evidence of payment by the mortgagor to the mortgagee: *Held*, that this was error; that the testimony of the plaintiff should have been submitted to the jury, as in the absence of any evidence on the part of the defendants, the plaintiff was entitled to the full benefit of his testimony, and any inferences of fact which the jury might be justified in drawing therefrom, and that they might have found such a payment.

2. Where a terre-tenant has procured the payment of a mortgage, although he has neither obtained possession of the mortgage nor had it satisfied, his equity is superior to that of an assignee of the mortgage who, at the time of the assignment, made no inquiry of the mortgagor who had sold the property to the terre-tenant in a deed that contained no reference to the mortgage.

3. Jeffers *v.* Gill, 20 Norris 290, distinguished.

March 30th 1880.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.    GREEN, J., absent.

Error to the Court of Common Pleas of *Northampton county :* Of January Term 1880, No. 226.

This was an issue directed by the court wherein Henry S. Sellers was plaintiff and James F. Benner, Susan Bodder, wife of Charles Bodder, and Charles. Bodder were defendants.

The issue was framed under the Act of Assembly of June 11th 1879, entitled "An act regulating the satisfaction of mortgages, when payment of the same has been made in full, and the mortgagees or legal holder or holders thereof have failed to enter satisfaction upon the record."

The petition of Sellers set forth that on April 1st 1867, Lewis Benner, being the owner of a house and lot in Bethlehem, gave a mortgage thereon to his son James F. Benner for $500, and that on April 1st 1868, he gave another mortgage to his son on the same property for $722. Both of these mortgages were recorded. That on September 29th 1877, Lewis Benner conveyed the said property to the petitioner, and that on the same day the petitioner paid the principal and interest due on said mortgages to the mortgagee James F. Benner, and that on the 26th of June 1879, James F. Benner assigned the said mortgages to Susan Bodder.

[Sellers *v.* Benner.]

The petitioner then prayed the court "to direct notice of the facts set forth in this petition to be given to the said James F. Benner and Susan Bodder to require them to appear at the next term of said court to answer said petition, and, upon due proof that the full amount for which the said mortgages were given has been paid, to order satisfaction to be entered on the record of said mortgages."

The answer of J. F. Benner set forth "that the said two mortgages in said petition described have never been paid by H. S. Sellers or any one else. That the father of this deponent sold the said premises to H. S. Sellers, subject to the said mortgages, and it was expressly understood and agreed at the time that the mortgages were not to be cancelled by the sale, but that they should be paid by the said H. S. Sellers. That since that time he has in good faith assigned the two mortgages to Mrs. Charles Bodder, who is now the owner, for a good consideration."

Mrs. Bodder in her answer alleged, "she found that the mortgages were standing open on the records of this county, that they rested on property which was worth a good deal more than the amount of the mortgages, and she was not aware of any question about their payment or of any dispute existing between James Benner and H. S. Sellers, or she would not have taken them and conveyed her property for them, and she claims that she is a bona fide assignee, for value, and without notice, and cannot be affected by any secret arrangements between the mortgagee and the present owner of the premises, if any such existed, and that the mortgagee cannot legally satisfy said mortgage to her prejudice.

"That she recently turned her mortgages over to an attorney for collection, who, she is informed, gave Sellers notice to pay, whereupon he began the present proceeding, although he was the owner of the mortgaged premises for nearly two years previous.

"That since she has been notified of the present proceeding, she has inquired of James Benner into the nature of the quarrel between himself and Sellers, and learns from him that Sellers sold or exchanged his livery stock for the margin in said house and lot, over and above the mortgages and $500 note, which has since been paid; that the said mortgages were never paid by Sellers or anybody else, and that if the mortgages were now satisfied Sellers would be paid for his stock twice over."

The court directed an issue "to try whether or not said mortgages have been paid, and that the said Henry S. Sellers be the plaintiff in said issue, and that the said James F. Benner and Susan, wife of Charles Bodder, be the defendants therein, and that the petition and answer stand as pleadings in said issue."

The following facts disclosed by the evidence together with those set forth in the opinion of this court sufficiently state the case.

On the 1st of April 1867, and on the 1st of April 1868, Lewis

[Sellers v. Benner.]

Benner executed and delivered two bonds to James F. Benner, one of the defendants; one for $500 and the other for $720, the payment of which was secured by two mortgages on a house and lot in the borough of Bethlehem. Both mortgages were duly recorded. On the 29th of September Lewis Benner by deed conveyed the house and lot to Henry Sellers, the plaintiff. The consideration mentioned in the deed was $3000. The deed was recorded on October 8th 1877. The evidence was that the sale and conveyance by Lewis Benner to Henry Sellers was in consequence of an arrangement entered into between James F. Benner the mortgagee and Henry Sellers by which the latter agreed to transfer and deliver, and did transfer and deliver the stock of a livery stable to James F. Benner at a valuation of $3500, the consideration of which was that Henry Sellers should have a conveyance of the house and lot of Lewis Benner, and a note of James F. Benner for $500; that James F. Benner was to give the mortgages on the house and lot to Henry Sellers; that the mortgages should be cancelled, and that the house and lot should be free of all encumbrances. The note was given but the bonds and mortgages were never transferred, nor satisfied on the record. There was no evidence that Lewis Benner, the mortgagor, had any knowledge of this arrangement between Henry Sellers and James F. Benner. It was also admitted that the bonds and mortgages in question were, on the 26th of June 1879, in writing and for a valuable consideration assigned by James F. Benner, the mortgagee, to Susan Bodder, wife of Charles Bodder, one of the defendants, and that the assignment was recorded on the 2d of July 1879. There was no evidence that Susan Bodder, at the time of the assignment of the bonds and mortgages, had either notice or knowledge of the arrangement between Henry Sellers and James F. Benner, the mortgagee, at the time of the conveyance of the mortgaged premises by Lewis Benner to Henry Sellers.

The defendants offered no evidence.

In the general charge the court, Meyers, P. J., inter alia, said: ·
" It is, however, contended on behalf of the plaintiff that at the time when the bonds and mortgages were assigned by James F. Benner to Susan Bodder, the deed of Lewis Benner to Henry Sellers of the mortgaged premises was on record, by which Susan Bodder had constructive notice of the sale and conveyance by Lewis Benner, the mortgagor, to Henry Sellers, that this circumstance imposed upon Susan Bodder the duty of making inquiry of Henry Sellers, the vendee, as to any subsisting equity between him and James F. Benner in respect to said mortgages, and that her failure to make such inquiry entitles the plaintiff to a verdict. In other words it is' contended that in consequence of such constructive notice, the equity of Henry Sellers, the plaintiff, is superior to that of Susan Bodder a purchaser of the bonds and mortgages for value

13 NORRIS—14

[Sellers *v.* Benner.]

without actual notice or knowledge of the arrangement between James F. Benner, the mortgagee, and Henry Sellers. We do not so understand the law. There is no doubt that Susan Bodder is bound by all the equities subsisting between Lewis Benner, the mortgagor, and James F. Benner, the mortgagee, at the time of the assignment of the bonds and mortgages to her. But as there is no evidence of a prior payment by Lewis Benner to James F. Benner, the rule requiring her to make inquiry of the former does not apply to the vendee of the mortgagor of his equity of redemption. Holding these views we are of the opinion that under the evidence the defendants are entitled to a verdict."

Verdict for defendants, and after judgment thereon, plaintiff took this writ, and alleged that the court erred in directing the jury to find for defendants.

*George W. Geiser* and *W. W. Schuyler*, for plaintiff in error.— The court below directed a verdict in favor of the defendants upon the authority of Mott *v.* Clark, 9 Barr 399, and kindred cases, which rule that the assignee of a mortgage takes it subject to the equities of the mortgagor alone, and not to the secret equities of third parties. This principle we do not question; we only deny its applicability. The equity which Mr. Sellers, the plaintiff below, set up on the trial, was the equity of the mortgagor growing out of the fact, as we contended, that he had paid the mortgages. All that Mr. Sellers claimed was the right, by devolution, to set up the mortgagor's equity in defence of his own title. At the very outset of the trial, therefore, the question as to who had paid the mortgages became one of the first importance; it was, moreover, a question of fact for the jury. It is alleged that plaintiff, by allowing the bonds and mortgages to remain in the hands of the mortgagee long after they had been paid, neglected a precaution requisite to protect those who came after him from imposition; that Mrs. Bodder was deceived thereby, and that plaintiff should bear the loss because his was the default. We contend that it was not necessarily negligence for him not to obtain possession of the mortgages: Horstman *v.* Gerker, 13 Wright 288. A party setting up an equitable estoppel is himself bound to the exercise of good faith and due diligence to ascertain the truth: 2 Story's Eq. Jur., sect. 1533, b; Moore *v.* Bowman, 47 N. H. 494. Did Mrs. Bodder exercise due diligence to ascertain the truth before she took the assignments of these mortgages? It is true, the mortgagor was dead at the time of the assignments, but this did not preclude inquiry of and notice to his legal representatives. Moreover, it does not appear that she knew of the death of the mortgagor, nor does it appear that she made any inquiry whatever as to whether there was any defence to the mortgages or note.

The assignee of a mortgage, unless the mortgagor has estopped

[Sellers v. Benner.]

himself, holds it subject to all the equities to which it was liable in the hands of the assignor: Ashton's Appeal, 23 P. F. Smith 153.

The want of notice to, and inquiry of, the mortgagor or his legal representatives, on the part of Mrs. Bodder, was sought to be justified in the court below by the allegation that such notice and inquiry would have been useless, on the theory that the mortgagor had no equities to be guarded against, and that therefore he would have no motives to disclose the truth.

Although the mortgagor had parted with his title to the mortgaged premises, *non constat* that these premises were worth the amount of the mortgages, and that he would not still be liable upon the bonds assigned for the deficiency. Besides, by giving a deed of bargain and sale to Mr. Sellers, he rendered himself liable over to Sellers, in case he (Sellers) should be compelled to pay the mortgages over again. The words, " grant, bargain and sell," in a deed, imply a covenant against encumbrances: Blossom v. Van Court, 34 Mo. 390 ; Cathcart v. Bowman, 5 Barr 317.

Between equal equities, priority of time will prevail: Bishp. Eq. 178. Jeffers v. Gill, 10 Norris 290, is clearly distinguishable from this case.

*W. E. Doster*, for defendants in error.—The plaintiff gave no evidence whatever that the secret arrangements he said he had with Benner had ever been in any way brought home or communicated to Mrs. Bodder. On the other hand, he admitted that he had allowed Benner to keep and hold the bonds and mortgages, and had made no effort, during nearly two years, to have them satisfied. He absolutely took no precautions to prevent any innocent person from buying the mortgages, according to their tenor, as they stood on the record and the mortgage index. His attitude, when he closed his case, was that of one who has by his supine negligence caused others to buy as a good security, and then defends himself by proving a secret arrangement had between himself and the seller that the security was in fact bad. He was at once confronted with the ordinary rule that the assignee of a mortgage is not affected by the secret equities of third parties—*i. e.* parties who are neither mortgagor or mortgagee, obligor or obligee—and again with the rule that, where the loss must be borne by one of two innocent parties, he by whose fault the loss occurs must suffer it. As the equities interposed were only those of third parties, not mortgagor and mortgagee, and as there was no claim that Lewis Benner ever paid anything on account, the court was clearly right in directing a verdict in favor of defendants.

If there were any doubts on the question whether a terre-tenant was a third party, or on the question whether Mrs. Bodder was bound to go to Sellers and inquire whether the mortgage was paid,

they have been judicially settled by the late case of Jeffers *v.* Gill, *supra*.

Mr. Justice STERRETT delivered the opinion of the court, May 3d 1880.

The Act of June 11th 1879, under which this issue was directed, provides in substance that if the holder of a mortgage fails from any cause to enter satisfaction upon the record of the same for six months after the debt secured thereby has been paid, the mortgagor, his heirs or legal representives, or the terre-tenant of the mortgaged premises, may present a petition to the court, setting forth the facts, and obtain an order for notice to the parties interested to appear and answer the petition; and if due proof be made that the debt has been paid, the court shall direct the recorder to enter satisfaction; "but if either of the parties shall desire any matter of fact that is affirmed by the one and denied by the other, to be tried by a jury, an issue shall be framed, and the same shall be tried accordingly, and if the jury shall find that the full amount for which the said mortgage was given has been paid, then satisfaction shall be entered on the record as aforesaid:" Pamph. L. 141.

The petition was presented by the plaintiff, alleging, among other things, that the premises were duly conveyed to him September 29th 1877, at which time the mortgages were fully paid. The defendants, in their answers, denied that they were paid; Benner, the mortgagee, alleging that the plaintiff had purchased subject to the mortgages, and assumed the payment of the debt secured thereby, and that the mortgages were subsequently assigned, for value and in good faith, to Mrs. Bodder; she in her answer claims that they were assigned to her in June 1879, without notice of payment or of any arrangement between the plaintiff and the mortgagee, and that she has since been informed by the latter that the plaintiff sold or exchanged his livery stock for a note of $500, and a conveyance of the premises subject to the mortgages. The court thereupon ordered an issue between the plaintiff and defendants, to determine whether or not the mortgages had been paid, and directed that the petition and answers should stand as pleadings.

On the trial of the issue, plaintiff introduced testimony which it is claimed was sufficient to establish all the material allegations in his petition; but the court thought otherwise, and directed a verdict in favor of defendants, thus sustaining the validity of the mortgages in the hands of Mrs. Bodder, the assignee. This is assigned as error, and the only question is, whether the testimony should have been submitted to the jury.

In the absence of any evidence on the part of the defendants, the plaintiff was entitled to the full benefit of his testimony, and

[Sellers *v.* Benner.]

any inferences of fact which the jury would have been justified in drawing therefrom. It cannot be doubted that they could have justly found that on or about September 29th 1877, the plaintiff sold and transferred to James F. Benner his livery stock consisting of stock on hand, horses, carriages, &c., valued at $3500, in consideration of which he was to receive an endorsed note for $500, and a conveyance of the premises described in the mortgages at a valuation of $3000, clear of encumbrances. This, of course, involved the satisfaction of the mortgages held by Benner against his father, and the plaintiff testified positively that they were to be satisfied on the record. At first it was proposed to procure a conveyance from the father to the son, and then from the latter to the plaintiff, but upon the suggestion of the scrivener that it would avoid unnecessary expense, the conveyance was made directly from the father to the plaintiff. The deed shows the date of the transaction, expresses the consideration named, and contains a special warranty against the grantor, his heirs and all persons lawfully claiming under him. This covenant as between the vendor and vendee would be available to the latter in case of eviction under the mortgages. The words, grant, bargain and sell also imported a covenant against encumbrances : Cathcart *v.* Bowman, 5 Barr 317 ; Shaffer *v.* Greer, 6 Norris 370. So that it was to the interest of Lewis Benner that the mortgages should be satisfied in the transaction, otherwise he might be liable on his warranty as well as implied covenant. There is no evidence that the conveyance was under and subject to the mortgages ; on the contrary, the testimony is all the other way, and the jury would have been fully justified in finding as a fact that the conveyance was intended to operate and did operate as a payment to the extent of $3000 on account of the livery stock, and at the same time as a payment in full of the mortgage debt, or what amounts to the same thing, that the plaintiff, by transfer of the livery stock to the mortgagee, discharged the mortgage debt, and to that extent was reimbursed by the conveyance from the mortgagor. Viewing it in either light, it was a payment and extinguishment of the mortgage debt, and the plaintiff had a complete defence against the mortgages in the hands of the mortgagee. Why has he not an equally good defence against the assignee who subsequently accepted the assignment without making any inquiry ? The plaintiff who derived title from the obligor had an equal right with the latter to interpose the defence of payment, unless he did or omitted to do something that might be set up as an estoppel as to him. It is said that he permitted the bonds and mortgages to remain in the hands of the mortgagee, and thus enabled him to impose on Mrs. Bodder. This is all that can be truthfully urged against an otherwise valid and meritorious defence ; and there might be some force in it if she had inquired of the obligor or his personal representatives and endeavored to ascertain whether the debts were unpaid, or there

[Sellers *v.* Benner.]

was any defence to the mortgages. That this was a duty which the law imposed on her cannot be doubted: Eldred *v.* Hazlett, 9 Casey 307; Ashton's Appeal, 23 P. F. Smith 153. It is not a sufficient answer to say that the mortgagor, having parted with his title, had no equities which he or his personal representatives were interested in asserting. We have already seen that recourse might be had against him or his estate on the warranty, and, moreover, the land might not be worth the mortgage debts, and in that event there would be a personal liability on the bonds for the deficiency. These equities were of sufficient importance to·render the usual inquiry necessary, and if it had been made before the assignments were accepted, it would doubtless have led to a discovery of the fact that the mortgages were paid and should have been satisfied; at least it is fair to presume that such would have been the case.

The learned judge in his charge conceded that Mrs. Bodder having failed to make inquiry was bound by all the equities subsisting between the mortgagor and mortgagee at the time the mortgages were assigned, but he instructed the jury that as there was " no evidence of a prior payment by Lewis Benner to James F. Benner, the rule requiring her to make inquiry of the former does not apply to the vendee of the mortgagor of his equity of redemption." In this we think there was error. There was testimony from which the jury might have fairly found a payment. No other consideration than the payment of the mortgage debts was shown for the conveyance to the plaintiff. The testimony tended to prove that the mortgagee procured the conveyance, and that to the extent of the mortgage debts at least he received the consideration in the form of a credit on his purchase of the livery stock. Nor did the testimony justify the inference that nothing more than the mortgagor's equity of redemption was conveyed or intended to be conveyed; on the contrary, in connection with the deed, it tended to prove that the conveyance was intended to be clear of encumbrances, and that the mortgages were to have been satisfied. It was not a secret equity of a third party that was attempted to be set up. It was the equity of the mortgagor against the mortgagee, based on the allegation of payment, that the terre-tenant was seeking to enforce. If he had accepted a conveyance under and subject to the mortgages, or had assumed their payment, a very different case would have been presented. The case of Jeffers *v.* Gill, 10 Norris 290, on which defendants in error rely, is essentially different from the present case. There the terre-tenant had assumed the payment of the mortgage, had actually paid part of it, and gave his negotiable note for the residue, and renewed the same several times under a collateral agreement with Gill that the bond and mortgage were to be held as security for the note and its renewals. The mortgage was also accompanied with a certificate of no defence. In view of these and other circumstances it was

[Sellers *v.* Benner.]

truly said in that case that the terre-tenant had been "grossly negligent. He gave his note for the balance due on the mortgage when it was yet in the hands of McCullough, and when it came into Gill's possession he took no steps to have the arrangement endorsed either on the papers or upon the record. The mortgage bond and certificate of no defence were left in Gill's possession as security for the note ; in other words they were to be of full force until the note was paid."

In the present case, if the position which the plaintiff's testimony tended to sustain be correct, the mortgages were actually paid at the time the property was conveyed, and they should have been satisfied on the record and delivered to the mortgagor. The mortgagee in fraud of the rights of the mortgagor, as well as his vendee, afterwards assigned these paid securities to one of the defendants who took them without resorting to sources of information from which, in all probability, she would have learned the fact of payment. Where inquiry becomes a duty the party who neglects to perform it should be visited with at least constructive knowledge of the facts which probably would have been revealed.

Judgment reversed, and a *venire facias de novo* awarded.