## Mortimer v. City of Philadelphia

*Sara Duffy,* for plaintiff.

*Abraham Wernick, Leonard L. Ettinger,* and *James L. Stern,* Deputy City Solicitors; *Isador Kranzel,* Assistant City Solicitor, and *David Berger,* City Solicitor, for defendant.

LEWIS, P. J., and SPORKIN, J., August 23, 1957.—This matter comes before us on defendants' motion for judgment on the pleadings. Plaintiff filed a suit in equity to compel the police commissioner of the City of Philadelphia to appoint him to the rank of captain in the police department. The city, the personnel director and the civil service commission were also named party defendants.

On May 21, 1957, defendants moved for judgment on the pleadings on the grounds of: (1) Laches; (2) discretionary function of executive department in preparing eligibility lists; (3) jurisdiction of equity; (4) expiration of eligibility list; (5) lack of vested right to appointment even if plaintiff received position on eligible list to which he claimed he was entitled; and (6) no right to particular assignment of duties.

In considering this motion, which is in the nature of a demurrer, the averments in the complaint and every reasonable inference arising therefrom must be accepted as true, provided, of course, the facts are properly pleaded: Necho Coal Co. v. Denise Coal Co., 387 Pa. 567 (1957); Gaul v. Philadelphia, 384 Pa. 494 (1956); London v. Kingsley, 368 Pa. 109 (1951); Bogojavlensky v. Logan, 181 Pa. Superior Ct. 312 (1956).

The well-pleaded facts stated in the complaint are as follows: On August 25, 1931, after civil service examination and certification, plaintiff was appointed a patrolman in the City of Philadelphia. Thereafter, on April 15, 1944, following another civil service test, he was promoted to the rank of detective. On October 17, 1950, plaintiff was appointed to the position of sergeant of detectives, without having taken a competitive examination, it not being necessary. On April 17, 1951, the Home Rule Charter of Philadelphia was adopted. On September 8, 1951, plaintiff was again promoted without competitive examination to the rank of lieutenant of detectives. On December 31, 1952, the rank of lieutenant of detectives was changed to that of police captain. Plaintiff served in this capacity until June 1, 1953, when he was temporarily assigned as a police lieutenant. On June 16, 1953, he was likewise temporarily assigned as provisional police captain. Then on March 8, 1954, he was reassigned to the permanent rank of police sergeant, which rank he now holds.[1]

The gravamen of plaintiff's complaint relates to a civil service examination he took on April 16, 1953, in pursuance of the Home Rule Charter, in order to qualify for promotion to the rank of captain. The

---

[1] These facts are set forth in Mortimer v. Philadelphia Civil Service Commission et al., 380 Pa. 520 (1955), involving the same plaintiff but a different issue.

examination was to be based 35 percent on written test, 45 percent on oral test, 10 percent on performance rating and 10 percent on seniority. Plaintiff in this examination received a final rating of 78.68 placing him no. 54 on the eligible list.

Plaintiff alleges that the rating he received was inaccurate, that the personnel director ignored plaintiff's performance rating of "outstanding" and instead gave him a "standard" rating. Plaintiff avers that an "outstanding" rating would have placed him no. 4 on the eligibility list, in contrast to no. 54, and that he therefore would have been appointed from the 1954 eligibility list in accordance with the numbers selected.

Plaintiff also states that during his service with the police force he has earned over 60 citations and commendations and that with reference to the examination in question there was on file with the personnel director a performance rating of "outstanding" as recorded by his superior, Detective Inspector John T. Murphy. Plaintiff avers that this rating was deliberately ignored and that he was "singled out and discriminated against by the Commissioner of Police acting in concert with the then personnel director, Donald C. Wagner, and the civil service commission." He further avers that since this examination he has been removed from active police duty to undesirable and inactive positions by the commissioner of police for the purpose of deflating plaintiff's spirit and enthusiasm and discouraging plaintiff's further service with the department.

Plaintiff asks that the court determine his place on the eligibility list of 1954 for police captain and order his appointment to that position as of the date it would have taken place had he been accorded his proper place on the list. Under the present civil service regulations,

plaintiff, as a police sergeant, can no longer qualify for an examination for the rank of captain.

On July 24, 1956, defendants filed an answer to the complaint and new matter, setting up as defenses to the suit: (1) The expiration of the eligibility list under section 7-401 (f) of the City Charter, which places a two-year limitation on such lists; and (2) discretionary power of the police commissioner to appoint from the eligibility list.

In plaintiff's reply to new matter on August 8, 1956, plaintiff denies that section 7-401 (f) has any application to the issues in this case since the cause of action is grounded upon discrimination. Plaintiff further asserts that section 7-401 (f) does not apply because the examination was a "stepped-up" one[2] and therefore the list constituted a "special" list not subject to the two-year limitation. Plaintiff further sets forth that since the establishment of the eligibility list no candidate placed upon the eligibility list has ever been passed over by the police commissioner.

On March 28, 1957, the equity list of this court was called and the instant case was set down for trial for April 3, 1957. On April 3, 1957, the case was continued by agreement of counsel.[3] On May 21, 1957, nine months after the pleadings had closed, defendants moved for judgment on the pleadings.

Without reaching the merits of defendants' contentions, this court could very easily dispose of defendants' motion on the basis of Pa. R. C. P. 1034, which provides that a motion for judgment on the pleadings be made "within such time as not to delay the trial," for it is obvious that the trial has been

---

[2] A "stepped-up" examination permits those below the next subordinate rank to compete.

[3] The reason for the continuance does not appear of record.

delayed.[4] We conclude, however, after considering the merits, that defendants are not entitled to their motion.

In passing upon a motion for judgment upon the pleadings, we are cognizant of the rule that summary judgment should not be entered except in the clearest cases, and where there is no issue of fact: Vrabel v. Scholler, 369 Pa. 235 (1952); London v. Kingsley, 368 Pa. 109 (1951); Waldman v. Shoemaker, 367 Pa. 587 (1951).

All doubts should be resolved against the entry of summary judgment: Bogojavlensky v. Logan, 181 Pa. Superior Ct. 312 (1956); Murray v. Yoe, 170 Pa. Superior Ct. 348 (1952). Doubtful cases should go to trial, especially those involving intricate relations demanding an inquiry into the facts of the controversy: Kittaning Coal Co. v. Moore, 362 Pa. 128 (1949).

### Laches

Plaintiff cannot be declared guilty of laches as a matter of law. This complaint was instituted on April 18, 1956. Plaintiff was officially notified of his grade in the qualifying examination on March 5, 1954. Plaintiff alleges in his complaint that after the "erroneous grading" of plaintiff's score was discovered (while the date is not stated in the complaint, it is stated as being September, 1954, in plaintiff's brief), plaintiff was immediately advised by the personnel director, Donald C. Wagner, that he would be advanced on the eligibility list. Oral promises of appointment were also made to plaintiff by the city

---

[4] The cases hold that a motion for judgment on the pleadings filed after the case has been listed for trial comes too late. See Weygandt v. Bell Tel. Co., 65 D. & C. 177 (1949), cited with approval in McHenry v. Welding, 179 Pa. Superior Ct. 358 (1955); Steudler, admx. v. Rust Engineering Co., 77 D. & C. 598 (1951).

solicitor's office in January, 1955. Plaintiff was further advised that his place on the list would have to await the outcome of the "Mueller case." Plaintiff alleges other facts causing him to be "lulled into a (false) sense of security."

The question of laches in this case is not so obvious and indisputable as to render it a question of law. What was said in Lehner v. Montgomery, 180 Pa. Superior Ct. 493, 501-502 (1956), Ross, J., is entirely applicable here: "The matter of laches . . . must be determined on the basis of a thorough examination of the facts. Laches, unlike the statute of limitations, does not operate solely by the passage of time, Scranton v. Manley, 13 Pa. Superior Ct. 439, 444. Eastman Kodak Co. v. Osenider, 127 Pa. Superior Ct. 332, 337, 193 A. 284. Rather, it is an equitable doctrine operating where the circumstances show that the plaintiff is chargeable with a lack of due diligence in prosecuting his claim, the enforcement of which would not be unjust. Fidelity and Casualty Company of New York v. Kizis, 363 Pa. 575, 578, 70 A. 2d 227. Laches is a factual question, Kepler v. Kepler, 330 Pa. 441, 448, 199 A. 198; it can be determined only upon examination of all the circumstances, and generally not simply on the basis of the pleadings: Schireson v. Shafer, 354 Pa. 458, 463, 47 A. 2d 665."

The cases cited by defendants are distinguishable. In McMonigle v. Philadelphia, 387 Pa. 341 (1956), the delay involved was of a "gross nature," 46 months, almost four years, and there were no allegations of being misled. In Commonwealth ex rel. Oliver v. Wilkes-Barre, 365 Pa. 24 (1950), four members of the police force were placed on the retirement list effective February 1, 1948. The complaint was filed February 1, 1949. However, during this time plaintiffs received the benefits of their pension and took no steps whatsoever to vindicate their rights for a period

of one year. In the instant case, plaintiff, immediately upon discovering the erroneous grading, attempted to have the situation rectified. He was continually promised redress. Bickering and haggling then marked the attempts of plaintiff and the city officials to deal with plaintiff's contentions. To what extent plaintiff was reasonably led to believe the city would remedy the alleged wrong is not apparent from the pleadings and should be left for determination by the chancellor.

## Discretionary Function

It is argued that a court of equity cannot interfere with administrative discretion. With this statement we find no quarrel. As Mr. Justice Chidsey stated in quoting the lower court in Whisted v. Philadelphia, 385 Pa. 213, 217 (1956) : "The law is clear that unless it is shown that the action of the administrative officers of the City in this regard is arbitrary or capricious, the Court has no authority to interfere, although it may not agree entirely with the judgment of the administrative officers: Crede v. Pittsburgh, 355 Pa. 369; Wagner v. Pittsburgh, 352 Pa. 647; Raffel v. Pittsburgh, 340 Pa. 243; Souder v. Philadelphia, 305 Pa. 1." [5] The difficulty with defendants' position is that here there is an allegation of "arbitrary or capricious" conduct. Paragraph 17 of the complaint makes this quite clear.[6]

---

[5] See also Downing v. Erie City School District, 360 Pa. 29, 33-35 (1948).

[6] Paragraph 17: "Plaintiff avers further that he has been singled out and discriminated against by the Commissioner of Police acting in concert with the then Personnel Director, Donald C. Wagner, and the Civil Service Commission; that the failure of the Personnel Department and Civil Service Commission to accord him the grades and ratings to which he was properly and legally entitled under the Philadelphia Home Rule Charter and the Civil Service regulations adopted pursuant thereto, was deliberate, discriminatory and illegal."

Naturally, this court will not substitute its judgment for that of the civil service commission, the personnel director or police commisioner in whom the discretionary power is vested (Wagner v. Pittsburgh, 352 Pa. 647, 649 (1945)), and will assume that persons holding responsible public positions will act in good faith until the contrary is clearly shown: Glesenkamp v. City of Pittsburgh, 320 Pa. 219, 223 (1935). But when faced with an allegation of arbitrary conduct, as appears here, this court on motion for judgment on the pleadings cannot disregard it, but must allow plaintiff the right to submit proof. See Gaul v. Philadelphia, 384 Pa. 494, 510 (1956); Wagner v. Pittsburgh, 352 Pa. 647 (1945).

### Jurisdiction of Equity

Since relief is sought here on the basis of bad faith and arbitrary conduct, no office having been previously held, equity is the proper forum to hear the case: Whisted v. Philadelphia, 385 Pa. 213 (1956). In Downing v. Erie City School District, 360 Pa. 29 (1948), the court said, on page 33: "Equity will intervene to restrain acts of municipal authorities which are contrary to positive law or amount to bad faith or constitute a violation of public duty: See Wilson v. Philadelphia School District, 328 Pa. 225, 239, 195 A. 90, and cases there cited." See also Detweiler v. Hatfield Borough School District, 376 Pa. 555 (1954).

Nor is the jurisdiction of equity defeated by a possible adverse outcome, where a case has been sufficiently pleaded: Downing v. Erie City School District, 360 Pa. 29, 33 (1948); Zerbe Township School District v. Thomas , 353 Pa. 162, 165-166 (1945).

The question here presented is different from that raised when one has occupied office and has been arbitrarily removed. See Weiss v. Ziegler, 327 Pa. 100 (1937).

Furthermore, we find equity jurisdiction on the basis of the nature of the case. If plaintiff proves his allegations, the relief to be administered may be too involved to be dealt with in an action at law. The governing principles were recited in the recent case of Pennsylvania State Chamber of Commerce v. Torquato, 386 Pa. 306, 329 (1956), Mr. Justice Bell, quoting from Pennsylvania R. R. Co. v. Bogert, 209 Pa. 589, 601 (1904) : " 'The most comprehensive statement of the rule, and the one which has been followed by this court ever since its announcement in 1850 by Judge King in Bank of Virginia v. Adams, 1 Parsons, 534, is as follows: "To induce equity to refuse its aid to a suitor, it is not sufficient that he may have some remedy at law. *An existing remedy at law* to induce equity to decline the exercise of its jurisdiction in favor of a suitor *must be an adequate and complete one.* And when from the nature and complications of a given case, its justice can best be reached, by means of the flexible machinery of a court of equity, in short where a full, perfect and complete remedy cannot be afforded at law, equity extends its jurisdiction in furtherance of justice." ' "

### Expiration of List

Section 7-400 of the Home Rule Charter provides for the preparation of civil service regulations and for position classification by the personnel director, with the approval of the civil service commission and the administrative board. Section 7-401 defines the contents of these regulations and in section 7-401 (*f*) provides:

"The establishment of eligible lists for appointment and promotion, upon which lists shall be placed the names of succesful candidates in the order of their relative excellence in the respective examinations. Such lists shall continue in force for at least one year from

the date of their establishment and thereafter until exhausted or replaced by more recently prepared lists but in no case longer than two years. All such lists shall be available for public inspection."

In the instant case the examination results were announced and an eligible list established on March 5, 1954. In accordance with the Charter that list remained in force until March 5, 1956. Defendants assert that with the expiration of the list plaintiff's rights also expired. This is a non sequitur. While it is clear that the eligible list has expired and that the court cannot resurrect it,[7] it still remains that plaintiff may be entitled to relief in equity. Equity considers that as done which ought to be done (Stark et ux. v. Larden Exec., 133 Pa. Superior Ct. 96, 102 (1938), and if plaintiff should have been appointed in January, 1955, as he claims, equity in considering all the circumstances may find it moved to vindicate his rights. On the other hand, the circumstances may make it inequitable for equity to act. The question is one properly left for determination at trial. We would be assuming too much to deny plaintiff this right.

### Lack of Vested Right

While it is true that plaintiff had no vested right to appointment regardless of the place he occupied on the 1954 eligibility list, it is also true that he could not be arbitrarily rejected. See Whisted v. Philadelphia, 385 Pa. 213, 217 (1956). Civil service would be a mockery if there were no controls. See, e.g., Truitt v. Philadelphia, 221 Pa. 331 (1908). Courts are hesi-

---

[7] See State ex rel. Chernesky et al. v. Civil Service Comm. of Bridgeport, et al., 141 Conn. 465, 106 A. 2d 713 (1954) ; City of Waco v. Akard, 252 S. W. 2d 496 (Texas 1952) ; Wood v. State Civil Service Comm., 155 P. 2d 153 (Colo. 1944), all of which involved trials presenting a different, albeit somewhat similar, issue to the instant case.

tant to interfere with administrative discretion, but such discretion must be controlled when it constitutes arbitrary and capricious conduct. All discretion is subject to limits no matter how broad it may seem to be. See Dauphin County Court, Grand Jury Investigation Proceedings No. 3, 332 Pa. 358 (1938).

"Underlying the entire legal philosophy (of the Home Rule Charter) was the acceptance of the doctrine of civil service and the rejection of the practice of dismissals for purely political reason(s), i.e., operation under the *spoils system.*" This theory was enunciated in Cornman v. Philadelphia, 380 Pa. 312, 321 (1955). We would be remiss in our duty if we were to ignore this underlying philosophy. The Charter prohibits an employing officer from dismissing his subordinates "at his arbitrary will," (Cornman v. Philadelphia, supra, at page 323), and upon like grounds, we conclude, prohibits such officer from refusing to appoint because of "arbitrary will." We therefore believe that plaintiff should have the opportunity to show whether he was in effect "arbitrarily" rejected by the appointing authorities.

## Unwanted Assignments

Defendants demur to plaintiff's allegations regarding his transferral to undesirable assignments. Defendants misconceive the purpose for which these facts are pleaded: Not to state a cause of action but to establish facts showing a plan to discriminate against plaintiff. We are in full accord with defendants' contention that plaintiff has no right to any particular assignment, and we so held in Richardson v. Samuel et al., C. P. No. 2, March term, 1951, no. 568. The allegations, however, are well-pleaded to show discriminatory conduct.

From the foregoing discussion it becomes apparent that some very serious issues are raised by the plead-

ings. It may well be that after trial everyone of defendants' theories may prove applicable. But we are here confronted with these problems without the benefit of proof upon a motion for judgment on the pleadings. We think in the present state the issues are not clear that this court can deny plaintiff his opportunity to have his day in court. For this reason and the fact that the motion was tardily made, defendants' motion for judgment on the pleadings is refused.