## Ashton's Appeal.

73　153
190　464
73　153
195　183
73　153
227　5　26

1. The assignee of a mortgage, unless the mortgagor has estopped himself, holds it subject to all the equities to which it was liable in the hands of the assignor.

2. The mortgagor having given a certificate that he has no defence, is estopped from setting up a defence against an assignee.

3. Any subsequent assignee may avail himself of a certificate of "no defence," given to the first, if he shows that he or a prior one under whom he claims was an assignee for value without notice.

4. A purchaser with notice of fraud or trust may protect himself under a prior purchaser without notice.

5. A creditor taking a chose in action as collateral security for a pre-existing indebtedness is not a purchaser for value.

6. Although a rule to open a judgment and let the defendant into a defence, has been discharged in a court of law; the defendant is not precluded from resorting to a court of equity for relief.

7. Burns, through an agent of a trust company, borrowed from them on a note and assigned stocks, &c., as collateral; the agent borrowed from Ashton who afterwards took an assignment of Burns's note and collaterals. *Held*, That Ashton took the collaterals subject to the equities between Burns and the company.

8. Stock was pledged as collateral for a note, the pledgee took a mortgage as further security, the stock at the time was of greater value than the amount of the mortgage; the pledgee had not the stock during the pledge, so as to redeliver on redemption. The mortgage was to be credited with the value of stock when executed.

9. Gilpin *v.* Howell, 5 Barr 41, distinguished. Wistar *v.* McManus, 4 P. F. Smith 318, followed.

[Ashton's Appeal.]

February 3d 1873.   Before READ, C. J., SHARSWOOD, WILLIAMS and MERCUR, JJ.   AGNEW, J., at Nisi Prius.

Appeal from Nisi Prius: In Equity: No. 10, to July Term 1868.

On the 16th of May 1868, Charles M. Burns filed a bill against George H. Ashton, Joshua Spering, Assignee, &c., of the National Safety Insurance and Trust Company, and said Company.

The bill set out:

1. In the month of May 1857, the complainant was indebted to the National Safety Insurance and Trust Company in the sum of $12,600, for which the company held, as collateral security, 125 shares of the capital stock of the Lehigh Coal and Navigation Company, and 700 shares of the capital stock of the Union Canal Company.   With these stocks the complainant had given to Stephen Coulter, who was the broker or agent of the company, powers of attorney, in blank, empowering him to transfer the said stocks.   On the 11th day of May 1857, Coulter, acting as agent of the company, under one of the powers of attorney, transferred the whole of the 700 shares of stock of the Union Canal Company, the market price then was $11 per share.   This transfer was made without any notice to the complainant, and without his knowledge or assent; he was not aware of it for nearly ten years afterwards, nor until after the bringing of the suits hereinafter mentioned.

2. In the fall of 1857 the company, without notice to the complainant of the transfer of the stock, required further collateral security, and the complainant on the 16th day of November 1867 executed his bond for $8000 and a mortgage for securing the payment of the same, to Horatio G. Jones, of premises on the west side of Broad street, Philadelphia, intended to be used as the additional collateral security required by the company.

3. On the first day of January 1858, the complainant gave his promissory note at ninety days, for $12,600, payable to his own order and endorsed by himself to Coulter.   This note was given for the amount of the prior indebtedness, and the bond and mortgage were assigned by Jones to Coulter, as agent of the company, and as a collateral security for the note.   On the face of the note the collateral securities held for the same were stated in the following form :—

" Collaterals.—A mortgage for $8000, and 125 shares Lehigh Coal and Navigation Company's stock, and 700 shares Union Canal Company's stock."

4. On the 6th and 7th of January 1858, Coulter, still acting as agent of the company, transferred to third persons the whole of the said 125 shares of the stock of the Lehigh Coal and Navigation Company.   This transfer was made before the note became due, without notice to the complainant, and without his knowledge

[Ashton's Appeal.]

or assent. The market price of the stock about the time of the transfer was $60 per share, at which rate the stock amounted to $7500.

5. The note was unpaid at maturity, and was held over by the company until March 26th 1861, when the complainant, at the request of Coulter and of Samuel K. Ashton, a director of the company, gave another note, also to his own order and endorsed by him, for $18,009—the difference between this and the first note being made up by simple interest to the amount of $2446.50, and by usurious interest to the further amount of $2962.50. At the time of making this new note the complainant was not aware that the stock of the Union Canal Company and of the Lehigh Coal and Navigation Company had been disposed of, nor was he so informed by the company or its agent or any of its officers; on the contrary, the mortgage of $8000, the 125 shares of the Lehigh Coal and Navigation stock, and the 700 shares of the stock of the Union Canal Company were entered on the face of the new note as collateral security in substantially the same form as that in which they had been entered on the first note, and as if still in the hands of the company.

6. On the 18th day of April 1861, the company made a general assignment for the benefit of their creditors to John Derbyshire, &c., and in the succeeding month of May, Spering, one of the defendants, was appointed assignee in their stead by the Court of Common Pleas of Philadelphia. He entered upon the duties of his trust and had since continued to fulfil them. The second note and its collaterals as such were set down in the inventory of the company's assets.

7. On the 24th day of May 1866, suit was brought in the District Court of Philadelphia, to June Term 1866, against the complainant on the mortgage of $8000, by George H. Ashton, as "assignee of Stephen Coulter, who was the assignee of Horatio G. Jones." Judgment was entered in this suit on the 1st of September 1866, for want of an affidavit of defence, and damages assessed on the same day at $11,680. At the time that this suit was commenced, the complainant was not aware that the stocks of the Union Canal Company and of the Lehigh Coal and Navigation Company had been transferred, and consequently made no affidavit of defence. Complainant averred that George H. Ashton held the note and securities as trustee of the assignee for the purposes of the assignment.

8. On the 8th of June 1867, the complainant obtained from the District Court a rule to open the judgment and to let him into a defence; all proceedings to stay in the meanwhile. And on the same day the complainant filed an affidavit of defence and in support of the rule. On the 16th of September 1867, this

rule was discharged on the motion of the counsel for Ashton, without notice to the complainant.

9. On the 9th of February 1867, Ashton brought suit against the complainant, in the District Court to the Term of March 1867, upon the said second promissory note, and filed a copy of the note, at the foot of which the mortgage, the Lehigh Coal and Navigation stock and the Union Canal stock are specified as collaterals for it. On the 22d of March 1867, the complainant filed an affidavit of defence in this suit, setting forth substantially the facts hereinbefore stated, with the exception of the transfer of the stock of the Union Canal Company, of which he was not then aware. No further proceedings have been had in this action.

10. On the 15th of February 1868, a writ of levari facias was issued in the suit on the mortgage, in which the real debt was stated as $11,680. This suit was stayed, and on the 22d of April 1868, an alias writ of levari facias was issued, which has also been stayed, upon payment by the complainant of the sum of $2000, on account of the mortgage, which payment was expressly made, by the complainant, and received by the counsel for the plaintiff in that suit, under an agreement that the same should be without prejudice to the rights of the complainant in the matter.

11. If credit had been given to complainant for the market price of the 700 shares of the Union Canal Company and of the 125 shares of the stock of the Lehigh Coal and Navigation Company, at the time they were respectively disposed of by Coulter, such credits would have amounted to $15,200, being $2600 more than the note of $12,600, and thereby more than paying his entire indebtedness. He averred that Lehigh stock was afterwards sold for $85 per share, which would have produced $10,625; that the dividends declared by the Lehigh Company upon the 125 shares of stock amounted to the sum of $2437.50.

The complainant averred that on an account (which he stated in his bill), in accordance with foregoing facts, there would be due to him $6580.85.

12. Complainant had been notified by the counsel for Ashton that he would issue a pluries levari facias, on the judgment on the mortgage, on or before the 20th day of the present month, and proceed to sell the mortgaged premises for the alleged balance of the judgment; whereas there is no balance due to the plaintiff, or to the assignee of the company, but, on the contrary, the company is largely indebted to complainant, as above stated.

The prayers were :—

1. An injunction against proceeding on the mortgage to enforce its payment.

2, 3. An account; and payment to complainant of the amount found to be due him.

4. That Ashton be directed to satisfy the mortgage.

5. Further relief.

Ashton by his answer admitted the averments of the 6th paragraph of the bill so far as related to the assignment by the Trust Company to Spering and averred ignorance of the other allegations in the paragraph.

He further answered:—

7. Between the fall of 1860 and the spring of 1861 I lent to Stephen Coulter, in cash and securities, upwards of $50,000. For my security certain collaterals were transferred and delivered to me ; among others the note of $18,009, 700 shares of Union Canal stock, and the mortgage of $8000. I hold these yet. I have realized on the collaterals other than these, sufficient to reduce the indebtedness to me to the sum of $26,845.06, without interest. The mortgage was delivered to me on the 15th day of December 1860, and an assignment sufficient in law to vest the title thereof was then made, but not in the usual form, and under advice, that of September 1861, was made, a copy of which has been filed in the record of the suit on said mortgage. At the assignment of the mortgage, a certificate signed by the complainant was also delivered me, a copy of which is hereto attached, (marked Exhibit A). I have been requested by the assignee of the company to proceed in the collection of my collaterals that he might fulfil the duties of his trust. I therefore placed the mortgage and note in the charge of my counsel, who has instituted the proceedings referred to in the bill. I deny that I am a formal holder of said securities, if by such averment it is meant that the assignment and delivery to me was for any fraudulent intent or for any other purpose than I have herein set forth.

9. I have brought the suit as averred in the ninth paragraph of bill. I did this to avoid the effect of the Statute of Limitations. I have been advised by my counsel not to proceed therein, until I have realized on the mortgage, and then to notify the complainant to pay the balance of his indebtedness on the note and accept the collateral, or failing so to do, to proceed to sell them on notice to complainant.

10. I admit the payment stated in the tenth paragraph of the bill. I instructed my counsel to stay the writ, on the express promise of the plaintiff to pay the balance within thirty days, in consideration of forbearance for that time.

11. I deny that Coulter ever disposed of the 700 shares of the Union Canal Company, inasmuch as he delivered them to me, and I have them yet. I do desire that my counsel shall proceed with the suits. As the mortgaged security is becoming impaired by delay, I am anxious that no further indulgence shall be given. Time has been lately given, at the request of Mr. Spering, on the assurance that the debt would be paid in a short time.

He then stated an account showing there were due him; $23,-792.51. " This the collaterals in my possession and control would not pay. If the debt and interest due on the mortgage be collected and the market value of the Lehigh stock which is now $25 a share, and of the Union Canal stock which is now 25 cents a share, be realized and the amount of dividends claimed be allowed; yet the complainant would be the debtor."

### Exhibit A.

" I do hereby certify, acknowledge and declare that I have no plea, set-off, or defence against a certain mortgage dated the 16th day of November last past, recorded at Philadelphia, * * * (which is now assigned to Stephen Coulter), and that the whole of the principal sum, to wit, eight thousand dollars, secured by said mortgage, with lawful interest from the date thereof, will fall due on the 16th day of November next ensuing the date thereof.

" Witness my hand and seal this 22d day of December, 1857.

C. M. Burns. [seal.] "

Spering answered generally on information : that amongst the assets of the Trust Company were those stated in the bill as being contained in the inventory; that all but the Lehigh stock were held by Ashton, defendant, as collateral for advances made by him to the company; that this stock had not been sold but had been hypothecated by Coulter to raise money for Burns (complainant) and had not been redeemed; that when the alias levari was stayed, complainant, with all the knowledge he had at filing the bill, paid $2000 on account and expressly promised in hearing of this respondent to pay the balance in 30 days in consideration of forbearance for that time.    Complainant had always, from the giving of the note, been unable to pay it; had never demanded his collaterals; he had made no complaint as to any dealing with the collaterals until the bringing of this bill; that considering the collaterals insufficient security for the note he had been indifferent as to them and taken no measures to learn anything about them. This respondent averred that the whole of the sum of $18,009, with interest and costs, was due by plaintiff, and should be paid on the surrender of the collaterals.

An examiner was appointed, and on the filing of his report, Duval Rodney, Esq., was appointed master.

The master found that Burns's stock was pledged through Coulter to the Trust Company, and that they almost immediately pledged it themselves without contract or notice to him ; the mortgage for $8000 was given as additional security for the note of $12,600, given Jan. 1st 1858, although they had previously parted with his Union Canal stock at $11 per share without crediting him with it, and on 26th of March 1861, the note of $18,009, given still without

such credit, both notes having the collaterals noted on them; the mortgage, the master found, to be in the same condition as the notes.

He then reported:—    *    *    *

"Under these facts and circumstances, without any attempt at explanation, one is forced to the conclusion that the plaintiff has a right to all the equitable set-off he claims in his bill against the company, or its representative, and is entitled to invoke the rules of law which apply to his case for his benefit.

"The company had no right to deal as they did with the securities which were confided to their care, even if the notes had matured, but they are not even upon that footing, for in neither case was the debt due."    *    *    *

Upon the question—"Had Ashton notice of Burns's set-off?" the master, after referring to the facts, said:—

"There could scarcely be imagined a case where more notice of equities could be given by the subject-matter itself. At every step he was warned by reference to the securities themselves that sometime Burns would be entitled to an account of them, and he knew, as a business man, that the holder would have to encounter a set-off.

"When the absence of all or any of this stock came to his knowledge, it was his duty to inquire where it was, and in default of such duty he cannot complain if he is held to a strict accountability, though he may be forced to assume the liability of the Trust Company, even to a punitive extent. These circumstances should have put any one on his guard, and would have alarmed the most reckless money-lender; and if he intervened to assist the company, that fact could only serve to inform him more thoroughly on the subject. Burns, though a debtor to the company, was not deprived of his legal rights, for when called upon to account, he would always be entitled to a credit for collaterals which were not forthcoming.

"Mr. Ashton has not shown that he was or is a holder of these securities, without notice, and he cannot claim the protection of such a position.

"But suppose he had established his bona fides and want of notice, still did he not as pledgor take these securities subject to all the equities between the original parties?    *    *    *

"It was contended by the defendant that a declaration of no set-off made by Burns on the 22d December 1857, estopped him from setting up this defence; but this declaration was made three years before Ashton took the mortgage, and the defences Burns had were not known to him at that time; and, besides, this declaration for Coulter's benefit could not avail Ashton.

"Upon both the facts and the law, the master reports that Mr. Ashton is subject to the equities existing between Burns and the

[Ashton's Appeal.]

Trust Company, and being thus subject, Burns is entitled to the relief as prayed for against him." * *

The master recommended a decree : " That an account be stated between the complainant, on the one side, and George H. Ashton and Joshua Spering, as representing the National Safety Insurance and Trust Company, on the other side, in which the complainant shall be charged with the sum of twenty-eight thousand three hundred and seventy-eight dollars and eight cents, as of the date of October 24th 1871 ; and George H. Ashton, and the other defendants, shall be charged with seven hundred shares of the stock of the Union Canal Company at eleven dollars per share, with interest thereon since May 10th 1857 ; with one hundred and twenty-five shares of the stock of the Lehigh Coal and Navigation Company at sixty dollars per share, with interest thereon from January 6th 1858 ; and with two thousand dollars, paid to Ashton in April 1868, with interest thereon.

" That the defendants George H. Ashton, &c., be restrained from issuing any further executions on the said judgment of the said George H. Ashton, viz., No. 202 of June Term 1866, District Court of Philadelphia, and from proceeding to levy any such execution upon the mortgaged premises, or to sell the said premises, upon any levari facias or execution on said judgment, and from proceeding any further to enforce payment of the same.

" That the defendants, George H. Ashton and Joshua Spering, do pay to the said Burns the sum of 2129.39 and that the said George H. Ashton satisfy of record the said judgment and the mortgage upon which the same has been obtained.''

The complainant and the defendants Ashton and Spering excepted to the master's report.

After hearing at Nisi Prius the court (SHARSWOOD, J.) overruled the exceptions and confirmed the report : holding however that Ashton was entitled to the benefit of the certificate of "no defence," given to Coulter. Ashton appealed to the court in banc and in eleven specifications assigned the decree for error.

*D. W. Sellers,* for appellant.—A purchaser for value of a mortgage, on the faith of a certificate of no set-off, cannot lose his security by what occurred prior thereto : Scott *v.* Sadler, 2 P. F. Smith 211; Stevenson's Appeal, 18 Id. 212. Ashton retained the collaterals. At one time he hypothecated the stock, but it was always under his dominion and control, which was sufficient : Gilpin *v.* Howell, 5 Barr 41; Wynkoop *v.* Seal, 14 P. F. Smith 361.

Burns had become the debtor of Ashton in September 1860. The advances were then made to Coulter on the mortgage and the Union stock. Coulter then, as is now alleged, had converted the Lehigh Coal and Navigation stock. If so, it was an appropria-

tion of a collateral by the agent of the plaintiff, the present debtor, the appellant, never having had it. The loss must fall wholly on Burns: Bank v. Peabody, 8 Harris 454; McConnell v. Weinrich, 4 Id. 365.

The defence could have been interposed on the sci. fa. to the mortgage. Where the opportunity to make defence is given and neglected, the judgment at law is conclusive in equity: City v. Girard, 9 Wright 9; Wister v. McManes, 4 P. F. Smith 318; Railway Co. v. Moore, 14 Id. 79.

*G. W. Biddle* and *J. A. Clay*, for the appellee.

The opinion of the court was delivered, February 13th 1873, by

SHARSWOOD, J.—It is clear upon the facts as reported by the master, that on the 15th of December 1860, the debt due by Burns to the National Safety Insurance Company, for which the mortgage now in question was one of the collateral securities, crediting upon it the proceeds of the seven hundred shares of stock of the Union Canal Company, and of the one hundred and twenty-five shares of Lehigh Coal and Navigation stock, was then more than paid. It did not appear that the creditor, the pledgee of the first-named stock, had in possession during the pledge at all times, such stock on hand, ready to redeliver on redemption, which was necessary to bring the case within the decision of Gilpin v. Howell, 5 Barr 41. That the assignee of the mortgage, unless the mortgagor had estopped himself from taking the defence, held it subject to all the equities with which it was affected in the hands of the assignor, is a principle too familiar and well settled, to need the citation of decisions to sustain it. But undoubtedly the debtor may be estopped as against the assignee, by the declaration that he has no defence or set-off to the debt assigned. In the face of such a declaration, he cannot set up his defence against an assignee, who takes on the faith of it. The complainant had made such a declaration on the twenty-second of December 1857. Before that, the Union Canal stock had been sold, and a defence to that extent then existed. The sale of the Lehigh Coal and Navigation stock was on the 6th of January 1858, subsequent to it, and of course, the defence arising therefrom was not precluded. We agree with the court below, that the benefit of it is not confined to the immediate assignee to whom or for whose security it was made; but that any subsequent assignee claiming under him may avail himself of it. To hold otherwise, would have the effect of closing the market for the sale of his security on the first assignee, if the debtor should refuse to give a new declaration. Upon the same principle, a purchaser with notice of fraud or trust, may take shelter under the wing of a prior purchaser, without notice, otherwise such prior purchaser would be deprived of the principal value of his privilege.

23 P. F. SMITH—11

But to avail himself of such an estoppel upon the debtor, the assignee who sets it up, must show that either he or some prior assignee from whom he claims, was an assignee for value, and without notice.   It is not pretended that Stephen Coulter, the first assignee, sustained such character.   In regard to the defendant Ashton, the master has reported it as his opinion upon the evidence, that the circumstances under which he became assignee, were such as ought to have put him on inquiry, and he ought, therefore, to be considered as affected with notice.   We think he had good reasons for this conclusion, if we compare with the date of the note of March 20th 1861, for $18,009, upon which the stocks and mortgage were marked as collateral, the date of the assignment of the mortgage to Ashton, and the dates of the various assignments of the stock as stated in the testimony of Oscar Thompson, the secretary and treasurer of the Union Canal Company.

But without entering upon an examination of this question, we think that Ashton has not shown that he was a purchaser for value.   A creditor who takes a mortgage, note, or other chose in action only, as security for a pre-existing indebtedness, and not for money advanced at the time, is not such a purchaser : Petrie *v.* Clark, 11 S. & R. 377 ; Irwin *v.* Tabb, 17 Ibid. 419 ; Hartman *v.* Dowdel, 1 Rawle 282 ; Twelve *v.* Williams, 3 Whart. 485 ; Depeau *v.* Waddington, 6 Id. 220 ; Trotter *v.* Shippen, 2 Barr 358 ; Ludwig *v.* Highly, 5 Barr 139 ; Kirkpatrick *v.* Muirhead, 4 Harris 123.   If, therefore, when the note of Burns and the accompanying collateral were assigned to Ashton, it was merely as security for a pre-existing indebtedness, he cannot claim as a purchaser for value to exclude Burns from his equitable defence or set-off by reason of the estoppel raised by his declaration.   It is plain, such an estoppel can only avail a purchaser for value as well as without notice.   The onus is always on him who sets up such a plea, to prove it.   The answer of Ashton on this point, upon which it ought to have been precise and clear, is general, and consequently vague and indefinite.   He says: " Between the fall of 1860 and the spring of 1861, I loaned to Stephen Coulter, in cash and securities, upwards of $50,000.   For my security certain collaterals were transferred and delivered to me, among others the note of $18,009, 700 shares of Union Canal stock, and the mortgage of $8000."   Nor does his testimony render it any more certain.   He testified : " I received the mortgage for $8000 and 700 shares of Union Canal stock.   I got them from Stephen Coulter.   I loaned money to him *at* or *about* that time.   I was constantly loaning him money.   I *had* loaned him altogether in the neighborhood of $50,000."   Taking the answer and testimony together, certainly the most natural interpretation of the whole is, that the note of March 20th 1861, for $18,009, with the mortgage

[Ashton's Appeal.]

and stock, was taken as security for loans previously made between the fall of 1860 and the spring of 1861.

The complainant has shown that when he suffered judgment to be entered by default for want of an affidavit of defence, the scire facias on the mortgage in the District Court, he did not know of this defence; and it is certainly settled by Wistar *v.* McManes, 4 P. F. Smith 318, that his failure to obtain relief by his motion in that court to open the judgment, will not preclude him from resorting to a court of equity, even if his case had been heard, and his rule, after hearing, discharged. It follows, that the injunction decreed against Ashton's proceeding to recover the amount of the mortgage, was right. But we think that the court below was in error in confirming that part of the decree reported by the master, which directed that the appellant, Ashton, and the assignee, Spering, should pay the complainant the balance found on the account with the insurance company in his favor. Ashton certainly had not received the proceeds of the Union Canal stock; nor, as far as appears, of the Lehigh Navigation stock. Spering, the assignee, with whom by the decree, Ashton is made a joint debtor, had not received any of it. There is no ground, therefore, upon which they can be held personally liable for the balance due to the complainant by the company. As the decree in this respect is joint, it must be reversed, though Spering has not appealed. It was insisted, indeed, upon the argument, that Burns is entitled to have refunded to him, with interest, the $2000 paid by him to Ashton, on account of the mortgage. Mr. Clay testifies, that this payment was to be "without prejudice." But this evidently meant without prejudice to his defence, that it should not operate as an admission by him that anything more was due. By this payment he purchased a stay of proceedings. It was, therefore, a perfectly voluntary payment, which, though not owing by Burns, yet Ashton could, with a good conscience, retain, and had it been intended that in any event it should be refunded, it should have been specially so agreed.

Decree reversed, and now it is ordered and decreed, that the defendants be restrained by injunction from issuing any executions on the judgment of the said George H. Ashton, No. 202, of June Term 1866, of the District Court for the City and County of Philadelphia, and from proceeding to levy any such execution upon the mortgaged premises, or to sell the said premises upon any levari facias or execution on said judgment, and from proceeding any further to enforce payment of the same, and that said Ashton shall enter satisfaction on the record of said mortgage, upon payment to him by the said Burns of the legal costs thereof, and that each party to this appeal shall pay his own costs.