## MARTHA E. JOHNSON

### v.

## WILLIAM D. GIBSON et al.

*Filed at Springfield March 27, 1886.*

1. JURISDICTION IN CHANCERY—*territorially—and herein, of the distinction where it is sought to act directly upon property, or only upon the person, in respect to property.* Where a court of equity attempts to act directly upon property, whether real or personal, by its decree, it is, in the absence of statutory regulation, essential to the power of the court to act, that the property to be affected be within the territorial jurisdiction of the court.

2. But where one claims to be the owner of land or other property situate in a foreign jurisdiction, which in equity and good conscience belongs to another, the latter may sue him in equity in any jurisdiction in which he may be found, and compel him to convey the property. In such case the decree operates on the person of the defendant, and does not directly affect the property itself.

3. SAME—*the statute construed.* Section 3 of the Chancery Code, requiring suits affecting real estate to be brought in the county where it lies, is only declaratory of a general principle which controls courts in administering equitable relief. When the relief sought does not require the court to deal directly with the estate itself, then the case is not within the meaning of the statute.

4. SAME—*as to creditor's bill—in what jurisdiction.* A creditor may maintain a bill to set aside a fraudulent conveyance of his debtor in any jurisdiction where the debtor and fraudulent vendee may be found. In such case the court does not act upon the land itself, but simply declares the conveyance void, and removes the same as an obstruction to the creditor's legal remedy.

5. SAME—*former decision—jurisdiction of creditor's bill.* The case of *Richards* v. *Hyde*, 21 Ill. 641, is not to be regarded as holding that a decree rendered in a creditor's bill filed to set aside a fraudulent conveyance in a different county from that in which the land lies, is void, and if it were to be so regarded, it could not be reconciled with prior and subsequent cases.

6. PUBLICATION—*sufficiency of affidavit made out of State.* An affidavit of inability to find certain defendants in a chancery suit brought in this State, or ascertain their place of residence upon diligent inquiry, will not be held bad or defective merely because sworn to by a party in another State instead of in this State.

7. CONCLUSIVENESS *of findings in decree—collaterally considered.* A decree upon a creditor's bill setting aside certain conveyances as fraudulent,

and finding certain facts, is conclusive upon the parties thereto, and they will be estopped in a collateral proceeding from denying the same.

8. FRAUDULENT CONVEYANCE — *as to property passing through the hands of an innocent purchaser, back to the original fraudulent grantee.* While an innocent purchaser, without notice of the fraud, obtaining property from a fraudulent grantee, may be protected, and take the same purged of the fraud, yet if he reconveys the same to the fraudulent grantee, the property may be reached in his hands, the same as though he had never parted with it.

APPEAL from the Circuit Court of Tazewell county; the Hon. N. M. LAWS, Judge, presiding.

Messrs. RUNYAN & PRETTYMAN, for the appellant:

Can a resident of the county be brought into the circuit court of such county by publication, made on the affidavit of complainant, that on due inquiry defendant can not be found nor his place of residence ascertained, when defendant is not concealed and does not evade service of process, and thus gives the court jurisdiction of defendant's person, to render a decree against him to cancel a deed or aid an execution in a foreign county? Rev. Stat. chap. 22, secs. 3, 12; *Richards* v. *Hyde,* 21 Ill. 641; *Fulton* v. *Riggs,* 23 id. 000; *Campbell* v. *McConn,* 41 id. 49; *Sinkle* v. *Lowe,* 74 id. 275; *Gondy* v. *Hall,* 30 id. 116; *Swarengen* v. *Gulick,* 67 id. 208; Revised Stat. chap. 30, sec. 36; *Morris* v. *Hoyle,* 37 Ill. 150.

If the court could not or did not acquire jurisdiction of the defendants, can a defendant or a stranger set up the want of jurisdiction of the court in an answer, in, or give evidence to show that fact, by the record or otherwise, in a collateral proceeding? That it may be done lawfully, see *Hayward* v. *Collins,* 60 Ill. 329; *Freedendel* v. *Boldwin,* 103 id. 329; *Adams* v. *Railroad Co.* 10 N. Y. 332; *Huls* v. *Brinton,* 47 Ill. 399; *Whitney* v. *Porter,* 23 id. 448; *Holbrook* v. *Murray,* 5 Wend. 163; *Pomroy* v. *Bills,* 31 Mo. 419; *Hall* v. *Williams,* 6 Pick. 282; *Boyland* v. *Boyland,* 18 Ill. 552.

Did the defendants in the case purchase *lis pendens,* and become estopped in this suit to set up title to the premises?

*Grant* v. *Bennett*, 96 Ill. 521 ; *Schank* v. *McHenry*, 88 id. 358 ; *Grinnell* v. *Cockell*, 77 id. 84 ; *Kennett* v. *Simon*, 65 id. 344 ; *C. D. Co.* v. *Foster*, 48 id. 507 ; *Peck* v. *Arhart*, 95 id. 113 ; *Lucas* v. *Lucas*, 103 id. 124.

Did the court err in excluding from the answer and from the evidence all facts set up in proof by the record, and by parol, of the absence of jurisdiction, to render the decree relied on by the complainants for title ? *Insurance Co.* v. *Myers*, 93 Ill. 271 ; *Thrift* v. *Fritz*, 101 id. 466 ; *Walton* v. *Walton*, 70 id. 142 ; *Pendleton* v. *Weed*, 17 N. Y. 75.

Mr. W. GARNETT, Jr., and Mr. WILLIAM DON MAUS, for the appellees :

A creditor's bill to remove fraudulent conveyances out of the way of the collection of judgments, is not one affecting land, within the meaning of the statute requiring suits affecting real estate to be brought in the county where it is situated. *Akin* v. *Lloyd*, 28 Ill. 331 ; *Smith* v. *Bryan*, 34 Ga. 53 ; *Bivins* v. *Bivins*, 37 Ga. 346 ; *McKinney* v. *Farmers' Nat. Bank*, 104 Ill. 180.

But if a local action is brought in the wrong county, and the court has a general jurisdiction of that class of cases, the defendant must plead to the jurisdiction, or otherwise take advantage of the irregularity, before final judgment on the merits. *Ryan* v. *Jackson*, 11 Tex. 391 ; *Morris* v. *Runnells*, 12 id. 177 ; *Stark* v. *Burr*, 56 id. 130.

The record finding the court had jurisdiction is conclusive, and can not be contradicted by other evidence than the record itself. *Barnett* v. *Wolff*, 70 Ill. 81 ; *Searle* v. *Galbraith*, 73 id. 269 ; *Carpenter* v. *City of Oakland*, 30 Cal. 439 ; *Harris* v. *Lester*, 80 Ill. 314 ; *Sloan* v. *Graham*, 85 id. 26 ; *Hunter* v. *Stoneburner*, 92 id. 75 ; Freeman on Judgments, (3d ed.) sec. 130, *et seq.*

The affidavit of non-residence was sufficient. *Hartung* v. *Hartung*, 8 Bradw. 156.

Insufficiency of notice of publication as to one of several defendants, can be urged by him alone.  *Fergus* v. *Tinkham,* 3S Ill. 407.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

On the 1st of July, 1882, Martha E. Rogers and William D. Gibson, the appellees, filed the present bill in the Tazewell circuit court, against Elizabeth A. Semmes, L. L. Conrad, Martha E. Johnson, and others, praying for the partition of a certain quarter section of land and two town lots, particularly described in the bill.  A decree was rendered upon the pleadings and proofs, in conformity with the rights of the parties as set forth in the bill.  From that decree Martha E. Johnson alone appeals.

All parties to the suit claiming an interest in the property in controversy, derive title through the appellant's husband, Charles R. Johnson, who, it is conceded, owned the whole of it on the 22d of April, 1875.  On that day, being in failing circumstances, he conveyed the two lots to one J. C. Frederick, who, in a week or two thereafter, reconveyed to Johnson's wife.  On the 15th of February, 1877, Johnson conveyed the quarter section of land to Edward A. Trask, who, in like manner, shortly thereafter conveyed the same to appellant.  Prior to the execution of these deeds Johnson had become indebted to said Elizabeth A. Semmes and Martha E. Rogers, respectively, in the sum of $7397.54, which occurred in the following manner:  Mrs. Semmes and Mrs. Rogers, together with Charles R. Johnson, who was their brother, in 1854 acquired, by devise, a considerable quantity of valuable land in the State of Iowa.  In 1867, Johnson being then a resident of Pekin, this State, and his sisters of the State of Maryland, they, at his request, executed to him a power of attorney, authorizing him to sell and convert into money these Iowa lands, which he undertook to

do, and to account to them for their shares of the proceeds. Prior to 1877 the lands, under this arrangement, had all been converted by Johnson into money. The sales made by him amounted in the aggregate to $18,123. Nevertheless, by means of false representations he had led his sisters to suppose that they amounted to only $4000, two-thirds of which amount he had paid over to them. In 1879, upon discovering his treachery and faithlessness, they filed a bill in the circuit court of Cook county, the place of his then residence, for an account. Although personally served he made no defence to this suit, which, on the 13th of February, 1880, resulted in a personal decree against him in favor of each of the sisters for the above mentioned sum of $7397.54, and several executions were issued thereon and levied upon the lands now in controversy. It will be borne in mind that by means of the several conveyances heretofore mentioned, the appellant had succeeded to her husband's title to the land in question. The legal title remained in her till September 30, 1879, when she conveyed to S. G. Paschael the two lots, and on the 11th of October following she conveyed the quarter section of land to Z. D. Geddes. Neither of these deeds was recorded until after Mrs. Semmes and Mrs. Rogers had commenced their suit against Charles R. Johnson, as heretofore stated. Z. D. Geddes, on the 16th of March, 1880, conveyed said quarter section of land to M. P. Harlow. S. G. Paschael, on the 13th of March, 1880, conveyed the two lots to E. E. Paschael, who, on the 19th of June, 1881, conveyed the same to appellant. On the 26th of the same month M. P. Harlow also conveyed his interest in the property to her.

Thus it will be seen, on the day last named, *to-wit*, the 26th of June, 1881, appellant became again the holder of the legal title to the entire property. Keeping this fact in view, it is proper now to note the additional steps taken by Mrs. Semmes and Mrs. Rogers to make their decree against Charles R. Johnson available. After causing their executions to be

levied on the property in controversy, as heretofore stated, Mrs. Rogers filed a bill in the circuit court of Cook county against Charles R. Johnson, the appellant, the two Paschaels, Geddes, Harlow and Mrs. Rogers, charging that all the deeds above mentioned were made without consideration, and for the purpose of hindering and delaying the creditors of the said Charles; that the indebtedness from said Charles to complainant and the said Semmes, existed before the execution of any of said conveyances; that the said Charles was wholly insolvent, and had been so since 1874; prayer that all of said deeds be set aside, and that the lands in question be subjected to the payment of the debt of complainant. Of the defendants named there was personal service on Johnson and his wife, and service by publication as to the Paschaels, Harlow and Geddes. Mrs. Semmes answered, admitting the allegations in the bill, and also filed a cross-bill setting up the same facts contained in the original bill, and praying the same relief. No defence having been interposed, a decree *pro confesso* was entered, in conformity with the prayer of the bill and cross-bill. The deeds above mentioned having been thus set aside as fraudulent and void, the sheriff, on the 29th day of January, 1881, sold the property in controversy, under a *venditioni exponas*, to the plaintiffs in the writ, for the sum of $12,000, who subsequently received a sheriff's deed for the same. In the present suit Mrs. Semmes and Mrs. Rogers derive title to the premises through the sale under the executions, and the sheriff's deed to them, as heretofore stated. Gibson and Conrad have severally purchased from them partial interests in the property, and consequently claim title through the same source. As between these four parties there is no controversy, the partition decree being satisfactory to them all.

The principal objection urged to the decree in this case is based upon the claim that the circuit court of Cook county had no power or jurisdiction to render the decree in the case

of Martha E. Rogers against Charles R. Johnson and others, setting aside and declaring void the deeds to and from Mrs. Johnson, Geddes, the Paschaels and Harlow, heretofore mentioned.

It is first urged that the suit was one affecting real estate, and should therefore have been brought in Tazewell county, as required by the third section of the Chancery act; that this not having been done, the decree therein rendered is void, and consequently may be attacked collaterally, as is here sought to be done. In support of this position, *Richards* v. *Hyde*, 21 Ill. 641, is cited. That case, in most respects, is substantially like the present, the material difference being the way in which the question of jurisdiction is raised. Here it is raised for the first time in a collateral proceeding. There a motion was made in the circuit court to dismiss the bill for want of jurisdiction, which was allowed, and this court, on error, affirmed the order of dismissal. The opinion in that case makes no reference to the statute, nor does it state the precise ground upon which the order of dismissal was sustained. The propriety of maintaining a bill under the circumstances, is discussed as though it was a question of first impression. No authority is cited, nor is any general principle alluded to, as controlling the decision. If in affirming the order it was intended to hold that a decree rendered upon its merits in such a case would be absolutely void, as is claimed to be the case here, we certainly fail to find anything in the opinion declaratory of such intention. Moreover, if such is the effect of the decision, it can hardly be reconciled with the general doctrines and principles which control courts of equity in analogous cases, and which have frequently been recognized before and since that decision. That a decree of the kind suggested would not be void, we think there is but little, if any, room to doubt, either upon reason or authority. Courts of equity are concerned chiefly with property rights, and when exercising this jurisdiction, unaffected by statutory

legislation, they act either directly upon the property involved in the litigation or upon the person having possession or control of it, depending upon the nature of the case or character of the relief sought. When the former course is to be pursued, it is essential to the power of the court to act that the property to be affected be within the territorial jurisdiction of the court. This is not only true with respect to real property, but it is equally true of personal property. A court of equity, for instance, has no more power to lay hold of a trust fund in another jurisdiction, and administer it through the instrumentality of a receiver or trustee, than it has to entertain a bill for the partition of land lying in a foreign jurisdiction, which, all concede, can not be done. Nor can a court of equity make any order or decree that will, by its own inherent force, divest one person and clothe another with the title to land in another county, except in cases expressly provided for by the statute. Yet, while this is so, it is equally well settled that where one is the owner of land or other property in a foreign jurisdiction, which in equity and good conscience he ought to convey to another, the latter may sue him in equity in any jurisdiction in which he may be found, and compel him to convey the property. The decree in such case directing a conveyance of the property does not directly affect the title of the property, yet the enforcement of it does result in the complete change of the title. So if a failing debtor makes fraudulent conveyances of his real estate for the purposes of hindering and delaying his creditors, the latter may maintain a bill in equity in any jurisdiction where the debtor and fraudulent vendee may be found, for the purpose of having them declared void as to the complaining creditor. In such cases the court does not act upon the land, or make any order in reference to it. It simply declares a certain transaction relating to the land fraudulent as between the complainant and the offending parties, and thus removes it as an obstruction to the creditor's legal remedy.

The rule applicable to cases of this kind is well stated by MARSHALL, C. J., in *Massie* v. *Watts*, 6 Cranch, 148. He says: "When the defendant is liable, either in consequence of a contract, or as trustee, or as *holder of a legal* title acquired by a species of *mala fides* practiced on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found; and the circumstance that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest the jurisdiction. * * * In case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction may be affected by the decree." The concluding part of this citation is, of course, not to be understood as authorizing a court of equity in any case to render a decree directly affecting land lying in another jurisdiction. In all these cases the principle *æquitas agit in personam*, applies, and the decrees in them can only indirectly affect real property. The decree in such cases settles the rights of the parties before the court with respect to some contract, conveyance, trust or fraudulent conduct, and by attachment or other coercive means compels the offending party to comply with the requirements of the decree, or simply declares the transaction complained of void, and thereby removes an obstruction to the enforcement of his legal remedies.

An exhaustive collection of the authorities on this subject, fully sustaining the view here taken, will be found in the notes to *Penn* v. *Lord Baltimore*, 2 Leading Cases in Eq. 1817, *et seq.* Moreover, the conclusion reached is in harmony with the decisions of this court upon other analogous questions, whereas to hold otherwise would lead to the opposite result. This is particularly true in respect to the rulings of this court as to when a freehold will or will not be involved. In this connection reference is made to the following cases: *Rose* v. *Choteau*, 11 Ill. 167; *Hutchinson* v. *Howe*, 100 id. 11;

*Conkey* v. *Knight*, 104 id. 337; *Sawyer* v. *Moyer*, 105 id. 192; *Furnace Co.* v. *Vinnedge*, 106 id. 650.

It follows from what we have already said, that the third section of our Chancery act, requiring suits *affecting* real estate to be brought in the county where it lies, when properly construed is but declaratory of a general principle which controls courts in administering equitable relief. Where the relief sought does not require the court to deal directly with the estate itself, then the case does not, within the meaning of our statute, or of the general rule of law existing independently of the statute, *affect* real estate, and hence affords no objection to the jurisdiction of the court where the parties in interest are all before it, although the land to which the controversy relates is not within the jurisdiction of the court. In support of this view the case of *Enos* v. *Hunter*, 4 Gilm. 211, is directly in point.

It is urged, in the next place, that the service by publication, as to the Paschaels, Geddes and Harlow, is insufficient, and that the court therefore failed to obtain jurisdiction as to them. The affidavit in the case states "that Z. Darius Geddes, Sampson G. Paschael, E. E. Paschael and M. P. Harlow, four of the defendants in the above entitled cause, on due inquiry can not be found, so that process can be served upon them, and that upon diligent inquiry the place of residence of said four last named defendants can not be ascertained, nor can the place of residence of any of said four defendants be ascertained upon diligent inquiry." The affidavit seems to be in conformity with the requirements of the 12th section of the Chancery act. The chief objection urged against it is, that it was sworn to outside of the State, and we are asked to say, as matter of law, that the investigation and inquiry contemplated by the statute in respect to the residence of the defendants, could not be made, for the purposes of a suit pending in Chicago, where it affirmatively appears, as it does here, that the affidavit was sworn to in

Baltimore, instead of in Chicago. This we are not prepared to do.

Holding adversely to appellant, as we do, upon the two questions just considered, little or nothing remains to be said, as they constitute the entire frame-work of the defence.

But outside of the considerations presented, the merits of this case are clearly with the appellees. That the land in question while in Johnson's hands was liable for the indebtedness for which it was sold by the sheriff, there is no question, and that the transfer of it by him to his wife was fraudulent and void, as against this claim, is equally plain. Moreover, she and her husband, who were served with process, and consequently were properly before the court, are estopped by the decree of 1880 from questioning either of these facts, or, indeed, any other facts found by it. That decree not only finds that the conveyance to her was fraudulent and void, but that the subsequent purchases of Geddes, the Paschaels, and Harlow, all of whom claim through her, were equally fraudulent with hers. This finding is conclusive on her, whether the service on them was good or not. So far as this record shows, they have all acquiesced in that decree, and she alone is complaining. When it is conceded, as it must be for the purposes of the present decision, that all these sales and transfers were fraudulent and void, what standing can appellant have in a court of equity? But waiving the estoppel, and conceding that some or all of the parties acquiring title subsequent to her were innocent purchasers, as is claimed, how could that purge her confessedly fraudulent title? While such innocent purchaser would have been protected, yet when the property was reconveyed to her, as it was before the final decree was entered in that suit, it became again subject in her hands, as it was before, to the payment of her husband's debts. 2 Pomeroy's Equity, sec. 754.

Waiving, then, the question of estoppel, and all like considerations, we have no hesitancy in saying that a careful

analysis of all the testimony leaves but little, if any, room to doubt that the various conveyances of the land in controversy, subsequent to and including those from Johnson himself, were but parts of a deliberate scheme to defraud his two sisters out of a just, honest, and highly meritorious claim. The decree will be affirmed.

*Decree affirmed.*