## BANK OF MENO v. COULTER.

No. 12741—Opinion Filed Dec. 18, 1923.

1. Judgment — Defenses—Bills and Notes —Bona Fide Purchasers—Assignment of Judgment to Assignor of Note.

Where A. fraudulently procures a note from B. with the connivance of C., and assigns the note to C., who assigns same to D., who reduces same to judgment on the grounds of being an innocent purchaser, and assigns the judgment back to C., the purchaser of the note with knowledge of the fraud, C. takes said judgment subject to all the equities and defenses that would have been available to B. against the original notes in the hands of A. or C.

2. Same.

A bona fide purchaser is not only entitled to protection for his title while it remains

in him, but he may also transfer such title to any other person, and with it goes his superior equity as a bona fide purchaser; and, although the grantee of a bona fide purchaser may have notice of outstanding conflicting interests which are a defect upon the title, he may still claim the benefit of the superior equity acquired by his grantor as a bona fide purchaser. But this rule is subject to the exception that a bona fide purchaser cannot reconvey the title. free from prior equities. to a former owner who was charged with notice of such equities. Eaton on Equity, 162.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Harper County; J. C. Robberts, Judge.

Action by F. A. Coulter against Bank of Meno to enjoin the collection of two judgments. Judgment for plaintiff and defendant appeals. Affirmed.

Hills, Manatt & Bowen, for plaintiff in error.

H. Z. Wedgwood and George D. Wilson, for defendant in error.

Opinion by JONES, C. This is a suit in equity to enjoin the collection of two judgments which were originally obtained by the Oklahoma State Bank of Enid, which without attempting to enforce the same, after their procurement, assigned them to the plaintiff in error. The basis of the judgments were two promissory notes of $1,000 each, fraudulently obtained from the defendant in error for stock in the Geronimo Motor Company. The agents who procured these notes from the defendant in error, Coulter, made their headquarters at the Bank of Meno, plaintiff in error herein, and were aided and abetted by its cashier in procuring the same.

The notes were assigned to the Bank of Meno, plaintiff in error, by the Geronimo Motor Company, and assigned by the Bank of Meno to the Oklahoma State Bank of Enid, plaintiff in error in the original suit, and judgments obtained thereon were assigned after their procurement to the Bank of Meno. In the original suit for judgment on the notes the lower court found that the plaintiff in error herein obtained the note with full knowledge that the same was fraudulent and without consideration, and gave the Oklahoma State Bank judgment upon the sole grounds that it was an innocent purchaser and holder of the same, having obtained the same by indorsement before maturity without knowledge of the fraud. The Bank of Meno, plaintiff in error, transferred the notes to the Oklahoma State Bank under a written agreement to make the purchasers

whole in the event it failed to realize on the notes by bringing suit. In the trial of the case of Oklahoma State Bank against Coulter, defendant in error, in this case, J. M. Cotton, cashier of the Bank of Meno, was a witness, and Hills, Manatt & Bowen, its attorneys, brought the suit and conducted the trial, consequently the plaintiff in error herein had full knowledge of the contention made and of the result of that case. On the trial of the case the court rendered judgment for the plaintiff, Coulter, enjoining the collection of the judgments in the hands of the Bank of Meno, plaintiff in error herein.

The only defense made by plaintiff in error is that of res judicata, contending that all of the matters set up and pleaded in this suit were pleaded and adjudicated in the action for judgment on the notes, and that the defendant in error cannot be heard to raise the question of fraud and lack of consideration at this time, and now urges that contention in this court, and cites numerous authorities in support of the rule or principle of res judicata, and calls special attention to the doctrine as announced in volume 23 of Cyc., page 1215, and many authorities there cited, and also calls special attention to the case of Comanche Ice & Fuel Co. v. Binder and Hillery, 70 Oklahoma, 172 Pac. 629, and other Oklahoma authorities announcing and upholding the rule of res judicata. There is no question, but that the rule as contended for is the general rule, and would apply to this case were it not for the fact that the facts controlling in this case bring it within the exceptions to the general rule.

The undisputed facts as disclosed by the record in this case are that the notes which were the basis of the judgments here in controversy were obtained from the defendant in error, F. A. Coulter, fraudulently and without consideration. They were then assigned to the Bank of Meno, plaintiff in error, which had full knowledge of the fraud and want of consideration, and were assigned by the Bank of Meno with recourse to the Oklahoma State Bank of Enid. The Oklahoma State Bank brought suit on the notes and procured judgment, and thereafter, without having made any effort to collect the same, assigned them to the Bank of Meno, which was charged with knowledge of the fraud perpetrated in the procurement of the notes, the basis of the judgment, and with knowledge of the fact that the Oklahoma State Bank had procured judgment on the notes solely for the reason and upon the grounds that they were innocent purchasers for value before maturity. As heretofore stated, the Bank of Meno had full knowledge of the institution of the suit on the

notes and participated in the trial. The rule is that one who actively participates in a suit, though technically not a party, is bound by the judgment. And the courts have gone so far as to hold that testifying as a witness may be sufficient participation. 23 Cyc., page 1249; Pew v. Johnson (Mont.) 88 Pac. 770; Am. Bonding Co. v. Loeb 92 Pac. 282. The application of this rule, however, is not necessary in order to maintain the rights of the defendant in error herein, but it strengthens his position and places the plaintiff in error at a greater disadvantage in its effort to collect the judgments in controversy. The plaintiff in error after taking the assignment of these judgments was in no better position to enforce them against the defendant than it would have been to enforce the payment of the notes against him. If these judgments had been assigned for value to some person other than the plaintiff in error, such party would have been a purchaser with clean hands, and taken them free of all equities, with full authority to enforce their payment; but not so with the plaintiff in error, as it could only take the judgments subject to the equities of the defendant in error against it.

Daniel on Negotiable Instruments, vol. 1, sec. 805, holds that the rule which provides that a holder with good title may transfer negotiable paper to a party having notice of its infirmity, and vest the transferee with his title therein, is subject to the exception that such transfer cannot be made back to a prior owner of the paper who had knowledge of the fraud. The text being as follows:

"Exception to General Rule. But this rule is subject to the single exception that if the note were invalid as between maker and payee, the payee could not himself by purchase from a bona fide holder become a successor to his rights; it not being essential to such bona fide holder's protection to extend the principle so far. And the like exception is made by courts of equity in determining the rights of persons having defective titles to estates. If the payees of the note were the agents of the real party in interest, they could not become the owners of the note so as to be held purchasers without notice of the transaction in which the defense inhered."

The same rule is announced by Eaton on Equity, at page 162, as follows:

"A bona fide purchaser is not only entitled to protection for his title while it remains in him, but he may also transfer such title to any other person, and with it goes his superior equity as a bona fide purchaser. And, although the grantee of a bona fide purchased may have notice

of outstanding conflicting interests which are a defect upon the title, he may still claim the benefit of the superior equity acquired by his grantor as a bona fide purchaser. But this rule is subject to the exception that a bona fide purchaser can not reconvey the title free from prior equities, to a former owner, who was charged with notice of such equities."

And the following authorities are cited in support of the same:

Bumpus v. Platner, 1 Johns. Ch. (N. Y.) 213, 219; Schutt v. Large, 6 Barb. (N. Y.) 373; Church v. Ruthland, 64 Pa. 432; Ashton's Appeal, 73 Pa. 153; Clark v. McNeal, 114 N. Y. 295, 21 N. E. 405; Johnson v. Gibson, 116 Ill. 294, 6 N. E. 205; Trentman v. Eldridge, 98 Ind. 525; Brown v. Cody, 115 Ind. 488, 18 N. E. 9.

The case of Clark v. McNeal, supra, involves almost precisely the same question of law and almost the same facts as appear in the instant case.

Ramsdell & Company held a second mortgage upon real estate. The first mortgage was not of record, but they acquired their mortgage with full knowledge of it. Ramsdell & Company sold their mortgage to an innocent purchaser and guaranteed the payment of it. This purchaser foreclosed his mortgage, and a decree was entered directing the sale of the land for its satisfaction, but before the sale took place the holder of the prior mortgage commenced an action to establish his lien, including this purchaser and Ramsdell & Company as defendants. Ramsdell & Company then paid their purchaser the full amount of his mortgage, interest, and costs in fulfillment of their guaranty to him. They then had the land sold under this decree obtained by their purchaser, and it was bid in in the name of James A. P. Ramsdell, one of Ramsdell & Company, and the referee made a deed to him. The defense was then set up in this suit brought by the owner of the first mortgage that Ramsdell & Company were innocent purchasers and holders of this real estate, because the party to whom they had sold their mortgage, and who procured the decree under which they purchased the real estate, was an innocent holder.

The opinion is a well-considered one collating the authorities, and including the opinions of both the eminent equity authors, Story and Pomeroy; the second paragraph of the opinion being as follows:

"It is clear that a sale to any one except Ramsdell & Company, or their representative, would have destroyed the lien of plaintiff's mortgage. But a sale to Ramsdell & Company or to one who purchased

for them would not have this effect. As the lien of their mortgage, while they held it, was subject to that of the plaintiff's so their title acquired under that mortgage would be subject to the same lien. By selling the mortgage they did not destroy plaintiff's equity, but simply prevented her from asserting it against a bona fide purchaser. If they had afterwards bought the mortgage the equity would have at once reattached, and when they bought the land upon a sale under the mortgage the equity of plaintiff's lien forthwith revived. It is a familiar principle that where one purchases with full notice of the equitable claim of another to the same property he will not be permitted to protect himself against that claim, but his own title will be postponed and made subservient to it. This is upon the ground that he is guilty of constructive fraud. If, however, he transfers to a bona fide purchaser, the latter not only takes a good title, but can transfer a good title, even to one who purchases with notice of the facts, as otherwise the bona fide purchaser would not get the market value of his property. To this general rule, however, there is an exception. The principle of protection does not extend to the one guilty of the constructive fraud, even if he purchases from a bona fide purchaser. The rule as stated in Story, Eq. Jur. 410, is that it is wholly immaterial of what nature the equity is, whether it is a lien or an incumbrance or a trust, or any other claim; for a bona fide purchaser of any estate, for a valuable consideration, purges away the equity from the estate in the hands of all persons who may derive title under it, with the exception of the original party, whose conscience stands bound by the violation of his trust, and meditated fraud. But if the estate becomes revested in him the original equity will reattach to it in his hands. The rule and the exception are laid down in Pom. Eq. Jur., 754, as follows: 'If the title to land having passed through successive grantees, and subject in the hands of each to prior outstanding equities, comes to a purchaser for value and without notice, it is at once freed from these equities. He obtains a valid title, and with a single exception, the full power of disposition. This exception is that such a title can not be conveyed, free from the prior equities, back to a former owner who was charged with notice.' The authorities are uniform upon the subject, so far, at least, as they apply to the facts of this case."

We think these authorities are decisive of the rights of the parties in this case and that they in a very forcible manner set forth the correct rule, followed by the trial court. We therefore recommend that the case be affirmed.

By the Court: It is so ordered.